# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **DAVID M. COOK, JR.,** | ) CASE NO. 1:18 CV 1982 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| | ) |
| **LAURA TAKACS, et al.,** | ) **MEMORANDUM OPINION** |
| | ) |
| Defendants. | ) |

This matter is before the Court on the Motions for Summary Judgment filed by Defendants, Laura Takacs, Rose Volpe and City of Middleburg Heights (Docket #44) and Plaintiff, David M. Cook, Jr. (Docket #45).

I.  **Factual and Procedural Background.**[1]

Between late Saturday, August 18, 2018 and the early morning hours of Sunday, August 19, 2018, City of Middleburg Heights Animal Control Officer Laura Takacs received a call regarding a dog at large in the City of Middleburg Heights and sent her Emergency Assistant to pick up the dog. The dog was loose in a residential neighborhood; did not have any

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

identification tags; and, Animal Control did not know who owned the dog. The dog was taken to the City of Middleburg Heights Kennel. The dog – later determined to be a pitbull named Storm – belonged to Plaintiff, David Cook. Mr. Cook testified during deposition he had put Storm outside on August 18, 2018 while cleaning the house with his mother, Gloria Singleton. (Deposition of David M. Cook, Jr. ("Cook Depo.") at p. 41.) Later, Mr. Cook fell asleep on the couch and slept through the night, forgetting that he had left Storm outside on his porch. (Id. at p. 42.) When Mr. Cook awoke the next morning (Sunday, August 19, 2018), he realized that Storm, who had escaped the porch area a few times before, was gone. (Id. at p. 66.) Mr. Cook drove around the neighborhood looking for Storm, but did not find her. (Id. at p. 43-44.) Mr. Cook went to the Middleburg Heights Animal Control Facility to look for Storm, but because it was a Sunday the building was not open. Mr. Cook stated during deposition that he spoke to someone from Middleburg Heights City Hall who instructed him to return to Middleburg Heights Animal Control the following morning at 7:00 a.m. (Id. at pp. 47-48.)

Animal Control Officer Takacs also went to the City of Middleburg Heights Kennel on Sunday, August 19, 2018, and learned that Storm belonged to David Cook. In her Affidavit, Ms. Takacs states that she observed the dog to be "extremely skittish and extraordinarily fearful. She would immediately flinch, closer her eyes, and hit the ground if you raised your had to pet her or even approach. She was exhibiting the body language of a dog that was beaten/hit routinely. There were several other people that witnessed the behavior." (Affidavit of Laura Takacs ("Takacs Affidavit") at Paragraphs 4-5.) Ms. Takacs states in her Affidavit that in addition to her own observations, she received "several anonymous calls from Mr. Cook's neighbors stating that they had great concern for the safety of the dog, and that if we gave her to Mr. Cook that we would be responsible for her death." Ms. Takacs "was told that Mr. Cook cut the dog's ears and

that he had kicked a prior dog to death." Ms. Takacs states she "was also told by the Law Director at the time that he received complaints from neighbors stating that Mr. Cook cut the dog's ears with scissors and kicked an earlier dog to death." Ms. Takacs states that the Law Director instructed her to hold onto the dog until an investigation was complete in order to keep the dog safe." (Takacs Affidavit at Paragraph 7.)

Mr. Cook returned to the Animal Control Facility on August 20, 2018 at 7:00 a.m. and it was not open. (Cook Depo. at p. 48.) Mr. Cook came back around 9:00 a.m but was unable to gain access to the building. (Id. at p. 49.) He called Middleburg Heights City Hall and was transferred to Defendant, Rose Volpe, who told him Ms. Takacs was in a meeting. Ms. Takacs returned Mr. Cook's call later that same day. Mr. Cook alleges that when he asked Ms. Takacs what he needed to do to get Storm back, Ms. Takacs did not respond. Ms. Takacs inquired regarding the fact that Storm's ears were cropped and asked if Mr. Cook had veterinarian records regarding the same. Mr. Cook responded that Storm's ears were cropped when he bought her as a puppy. Ms. Takacs informed Mr. Cook that he needed a new Cuyahoga County dog tag to retrieve Storm and that Storm was at the veterinarian's office for an examination. (Id. at pp. 50-52.)

Within an hour of speaking to Ms. Takacs, Mr. Cook obtained the required Cuyahoga County dog registration and called City Hall. Mr. Cook was transferred to Ms. Volpe. He informed Ms. Volpe that he had the dog tag and was on his way to pick up Storm and states that Ms. Volpe replied, "okay." Mr. Cook states that when he tried to retrieve Storm, no one answered the door, and that when he contacted Ms. Volpe, she stated Ms. Takacs was on another emergency call. Mr. Cook then went to City Hall to speak to Ms. Volpe and Ms. Volpe indicated that Storm was being examined by a veterinarian. (Id. at p. 53.) Mr. Cook questioned

the City's authorization to take the dog for an examination and asked who would pay for the veterinary exam. (Id.) Mr. Cook states that he was told that the City would pay for the veterinary exam. (Id.)

Mr. Cook's mother, Gloria Singleton, also called City Hall on August 20, 2018. (Affidavit of Gloria Singleton ("Singleton Affidavit") at Paragraph 3.) Ms. Singleton was told that Ms. Takacs was unavailable and she was transferred to Ms. Volpe, who Ms. Singleton alleges represented that she was Ms. Takacs's superior. (Id. at Paragraph 4.) Ms. Volpe told Ms. Singleton that Mr. Cook could not get Storm back because "he killed his dog" and because Mr. Cook's neighbors had complained. (Id. at Paragraphs 4-5.) Ms. Singleton questioned the fact that Storm had been taken to a veterinarian for examination and asked who would be responsible for the veterinary costs. (Id. at Paragraph 5.) Ms. Singleton was referred to the Law Director, Gary Ebert, and left a message. (Id. at Paragraphs 6-7) Ms. Singleton also called Mayor Gary Starr twice, but he was unavailable. She left a message. (Id. at Paragraph 8.)

The Veterinarian examined Storm and she appeared to be healthy, "except for her fearful condition and marks around her rear and vaginal area. Her ears appeared to be home crop job." (Takacs Affidavit at Paragraph 6.) Ms. Takacs called Mr. Cook in the evening on August 20, 2018 and indicated that Mr. Cook could pick Storm up at noon on August 21, 2018 at the Animal Control Facility.

On August 21, 2018, Mr. Ebert returned Ms. Singleton's call and told her that he would investigate further and talk with the City Prosecutor, Santo Incorvaia. (Singleton Affidavit at Paragraph 7.) Ms. Singleton called Mayor Starr that day and left a message on the Mayor's voicemail. The Mayor did not return her call. (Id at Paragraph 9.)

Mr. Cook states that on August 21, 2018, Ms. Takacs called him and informed him that she may not be available due a Union meeting, but that he could pick Storm up from the Middleburg Heights Police Department. (Cook Affidavit at Paragraph 22.) Nevertheless, Ms. Takacs was at the Police Department when Mr. Cook and Ms. Singleton arrived to retrieve Storm. (Cook Depo. at p. 54; Cook Affidavit at Paragraph 23.) Prior to this meeting, the City Prosecutor had decided to cite Mr. Cook for violations of the Middleburg Heights City Ordinances prohibiting Animals at Large and Cruelty to Animals. Ms. Takacs handed Mr. Cook two Citations: a) Animal at Large in violation of Middleburg Heights Codified Ordinance § 618.02(a), Citation No. 01378, with a violation date of August 18, 2018 at 9:27 p.m. and a Court date of September 5, 2018, and (b) Cruelty to Animals in violation of Middleburg Heights Codified Ordinance § 618.05(a)(1), Citation No. 01379, with a violation date of August 18, 2018 at 9:27 p.m. and no Court date listed. (Takacs Affidavit at Paragraph 8; Cook Depo. at p. 54; Cook Affidavit at Paragraph 23.) Mr. Cook refused to sign the Citations. (Cook Depo. at p. 55; Cook Affidavit at Paragraph 23.)

At the Police Department, Ms. Takacs asked Mr. Cook if Storm had ever had surgery or litters of puppies because there was a scar on her stomach, which Mr. Cook denied. (Cook Affidavit at Paragraphs 24-25.) Mr. Cook stated during deposition that the scar was not present before Storm was impounded and that he asked Ms. Takacs if any surgical procedures were performed on Storm. Mr. Cook asked if Storm had been microchipped and alleges that Ms. Takacs was evasive and told him that Storm would get a microchip. (Cook Depo. at p. 62; Cook Affidavit at Paragraph 25.) Ms. Takacs also questioned Mr. Cook about Storm's ears being cut. (Id.) She informed Mr. Cook that he could not retrieve the dog until a court date occurred. Mr. Cook alleges that Ms. Takacs's "promise to give [the dog] to Mr. Cook was clearly a false

-5-

pretense to lure him to the police station so that she could serve him with criminal citations." (Docket #45 at p. 5; Cook Depo. at p. 59.)

Mr. Cook had no contact with anyone from the City of Middleburg Heights after the August 21, 2018 meeting at the Police Department. (Cook Affidavit at Paragraph 26.) On August 25, 2018, Mr. Cook received citations by mail for the same offenses, with two new Citation Numbers and different Court dates: a) Animal at Large in violation of Middleburg Heights Codified Ordinance § 618.02(a), Citation No. 01380, with a violation date of August 18, 2018 at 9:27 p.m. and a Court date of August 28 or 29, 2018 (the date was difficult to read) and (b) Cruelty to Animals in violation of Middleburg Heights Codified Ordinance § 618.05(a)(1), Citation No. 01381, with a violation date of August 18, 2018 at 9:27 p.m. and a Court date of August 28 or 29, 2018.[2]

Mr. Cook has consistently denied all allegations of animal abuse and testified during deposition that Storm's ears were cropped when he purchased her as a puppy. (Cook Depo. at pp. 17, 56-67.) On September 5, 2018, the hearing date originally listed on the Citations provided to Mr. Cook at the Police Department, the charges against Mr. Cook were dismissed and Storm was returned to Mr. Cook. Mr. Cook argues the charges were dismissed because of an error on the Citations. Defendants state that the City Prosecutor decided to drop the charges.

Defendants state Storm was well-cared for, exercised, fed and given water while in the custody of the Animal Control Department; was not microchipped; and, was returned to Mr.

---

2

It is unclear whether there was any communication between the Parties regarding the conflicting Court dates listed on the first and second sets of Citations. Mr. Cook states he had no contact with anyone from the City between August 21, 2018 and September 5, 2018.

Cook in perfect health. Mr. Cook testified during deposition, "There was a rash, and there was a little bit of a scab or scar where it looked like something might have been done to her. And she had like, itchy spots, and I don't know if that's from how she was kenneled." (Id. at p. 64.) He treated the rash with ointment he had and the rash cleared up after two weeks. (Id.)

Mr. Cook did not have any veterinary expenses associated with Storm's impoundment. (Id.) He testified that he lost work hours, in addition to "doing legal work at night and making copies of papers and getting phone records and all of those types of things." (Id. at p. 67.)

**II.     The Complaint.**

Mr. Cook initially filed his Complaint in this case on August 29, 2018 and, shortly thereafter filed Motions for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction. An Amended Complaint was filed on November 5, 2018, along with a new Motion for Permanent Injunction and Preliminary Injunction. (Docket #s 12 and 13.) The Motion for Permanent Injunction and Preliminary Injunction was later withdrawn by agreement of the Parties. (Docket #30.)

In his Amended Complaint, Mr. Cook sets forth ten (10) Claims for Relief: Count I – Injunctive Relief; Count II – Declaratory Relief; Count III – 42 U.S.C. § 1983, Fourth Amendment Violations; Count IV – 42 U.S.C. § 1983, Fourteenth Amendment Violations; Count V – 42 U.S.C. § 1983, Middleburg Heights Ordinance 618.02 Unconstitutional as Applied; Count VI – 42 U.S.C. § 1983, Middleburg Heights Ordinance 618.05 Unconstitutional as Applied; Count VII is missing; Count VIII – Preemption, Middleburg Heights Ordinance 618.02; Count IX, Violation of Article I, Section 16 of the Ohio Constitution; Count X, Monell Claim; and, Count XI, Attorney Fees – 42 U.S.C. § 1988.

### III. Motions for Summary Judgment.

Motions for Summary Judgment were filed by the Parties on April 29, 2019. (Docket #s 44 and 45.) Mr. Cook seeks summary judgment in his favor as to all of the claims raised in the Amended Complaint, arguing that Defendants continued impoundment of Storm after her initial seizure pursuant to the City's Animal at Large Ordinance, without a probable cause hearing, violated his rights under the Fourth and Fourteenth Amendments. Mr. Cook argues that under Middleburg Heights Ordinance § 618.03(c), Defendants were required to deliver Storm, who was unlicensed at the time she was initially seized, to the County Dog Warden and that Middleburg Heights Ordinance § 618.05, addressing Cruelty to Animals, does not authorize the impoundment and retention of animals without a probable cause hearing as specified under Ohio Rev. Code § 959.132.

Further, Mr. Cook argues that Middleburg Heights Ordinances §§ 618.02 (prohibiting Animals at Large) and 618.05 (prohibiting Animal Cruelty) are both unconstitutional as applied and void for vagueness, asserting that neither authorizes the impoundment and retention of animals by the City, and also argues that Middleburg Heights Ordinance § 618.02 is preempted by Ohio law. Finally, Mr. Cook argues that the City of Middleburg Heights should be held liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), alleging that the City has adopted customs or policies which resulted in a violation of Mr. Cook's Constitutional rights. Mr. Cook offers the Affidavits of two other individuals who had animals impounded with the City of Middleburg Heights who were dissatisfied with the City's actions and, like Mr. Cook, believed their rights had been violated.

Defendants seek summary judgment in their favor as to all of Mr. Cook's claims.

Defendants argue that the seizure of Storm was reasonable and lawful; that the City's actions following the seizure of Storm satisfied Mr. Cook's procedural due process; and, that even if Mr. Cook had a valid Constitutional claim, individual Defendants Takacs and Volpe are entitled to qualified immunity. Defendants argue that there is no evidence to support a pattern or practice claim under 42 U.S.C. § 1983. Further, Defendants argue that the City's Ordinances are lawful, proper and necessary and should not be disturbed.

The Parties' Summary Judgment Motions are fully briefed and ripe for review.

### IV.     Standard of Review.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist

unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## V.  Discussion.

In order to prevail on a claim brought pursuant to § 1983, a plaintiff must establish by a preponderance of the evidence that a person acting under the color of law deprived him of a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. Tenn. 2006). A violation of § 1983 must be intentional or knowingly committed in order to be compensable. A negligent or reckless deprivation is not sufficient. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. Mich. 1999). Further, an injury caused by mere negligence, that does not rise to the level of a constitutionally protected interest is not compensable under §1983. *See Collins v. City of Shaker Heights*, 503 U.S. 115 (1992).

Government officials are protected from liability for civil damages, including those that arise under §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

To determine whether qualified immunity applies in a given case, we use a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether

the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. Ohio 2012); see also *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We can consider these steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can, therefore, be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690; see also *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. Ohio 1999). A plaintiff must prove (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. Tenn. 2005).

Regarding municipal liability under § 1983, the Supreme Court has held that if the officer inflicted no constitutional injury on a person, then it is "inconceivable" that the City could be liable to the person. *DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 429 (6th Cir. Mich. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)(per curiam)). If "a person

-12-

has suffered no constitutional injury at the hands of the individual police officer, the fact that department regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799.

**Initial Seizure.**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." City of Middleburg Heights Ordinance Section 618.02, entitled "Animals at large; abandoning animals," prohibits animals running at large within the City. Section 618.03(c) permits the City Animal Control Officer to impound a dog found running at large and states that the City Animal Control Officer will return licensed dogs to their owners and unlicensed dogs will be delivered to the County Dog Warden. Defendants acted lawfully when they initially "seized" Storm after being notified Storm was at large. Mr. Cook knew soon after waking up on August 20, 2018 that Storm was impounded at the City's Animal Control Facility and the next morning obtained a dog license for Storm as requested by Ms. Takacs.

Mr. Cook argues that rather than hold Storm at the City, Defendants were required to deliver Storm to the County and, that had they done so, it would have facilitated the return of his dog more quickly. However, as set forth above, Middleburg Heights Ordinance 618.03 provides that *unlicensed* dogs will be delivered to the County Dog Warden. It is hard to imagine that this provision was enacted so as to require transfer, but rather to authorize transfer of unlicensed animals to the County Dog Warden. Regardless, Mr. Cook had in fact obtained a dog license for Storm after being informed he was required to do so – with the intention of picking Storm up from the City – and immediately notified Ms. Takacs of the same. The fact that Defendants did

not transfer Storm to the County Dog Warden presents no actionable claim.

Likewise, Mr. Cook's argument that had Storm been transferred to the County, she could have been picked up within 3 days, is insufficient to state a cognizable legal claim. Ohio Rev. Code § 955.16(A), cited by Mr. Cook, provides that unless immediate destruction of the dog is warranted, dogs that have been seized and impounded shall be kept by the County for 3 days for the purpose of redemption – longer in the case of registered dogs when attempts to notify the owner have failed – and authorizes the County Dog Warden to take additional steps thereafter in the event no one comes forward to claim the dog. Section 955.16(A) has no relevance to the facts and circumstances in this case.

**Animal Cruelty Investigation and Continued Impoundment.**

It is undisputed that upon Storm's impoundment, Ms. Takacs observed Storm's fearful behavior; noticed the fact that Storm's ears appeared to have been cut; and, received additional information from City residents and the Law Director, necessitating further investigation into the possibility that Storm had been abused. At that point, Storm's seizure became an animal cruelty investigation, rather than a simple instance of a dog at large. There is nothing within Middleburg Heights City Ordinances or State law requiring the City to transfer a licensed dog to the County Dog Warden during an animal cruelty investigation.

Ohio Rev. Code § 959.131 and Middleburg Heights City Ordinance § 618.05 prohibit cruelty to animals. Ohio Rev. Code § 959.132 provides that a person appointed to act as an animal control officer for a municipal corporation "may seize and cause to be impounded at an impounding agency a companion animal that the officer has probable cause to believe is the subject of an offense" and that when a dog is seized for suspicion of animal cruelty, a notice

-14-

must be given to the owner which includes "a statement *that a hearing will be held not later than ten days after the notice is provided or at the next available court date* to determine whether the officer had probable cause to seize the companion animal." Mr. Cook alleges that Defendants failed to provide sufficient notice and a probable cause hearing within 10 days of Storm being impounded, violating his due process rights.

The fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). In the context of dog seizures, the Seventh Circuit has noted that a "temporary deprivation" requires "only modest process." *Wall v. City of Brookfield*, 406 F.3d 458, 460 (7th Cir. 2005)(retention of dog for 60 days required only modest process).

Mr. Cook was aware that the City was investigating the alleged animal abuse and had sufficient notice of the charges against him – as he was both handed and mailed citations for violation of the City Ordinances prohibiting animals at large and cruelty to animals. There is no indication that Mr. Cook communicated with City officials or asked to have Storm returned between August 21, 2018 and September 5, 2018. Storm was ultimately returned to Mr. Cook 18 days after he was seized and the charges against him were dismissed prior to the scheduled hearing. There is no Constitutional right to have an animal cruelty hearing within 10 days; the Ohio statute relied upon by Mr. Cook requires a hearing either within 10 days *or at the next available court date*; and, Mr. Cook has otherwise failed to sufficiently allege that the temporary retention of Storm prior to the scheduled hearing violated his Constitutional rights. Furthermore, given that there has been no Constitutional violation, there is no basis upon which to find the City liable and the evidence is otherwise insufficient to establish a claim under *Monell*.

Even if it could be argued that something close to a Constitutional violation occurred, which this Court does not find, individual Defendants Takacs and Volpe are entitled to qualified immunity. The actions of Ms. Takacs – and Ms. Volpe with regard to her minimal and insignificant involvement in this case – were reasonable under the circumstances. Defendants were investigating serious allegations of animal cruelty. There is no evidence that Defendants acted to intentionally or knowingly violate Mr. Cook's Constitutional rights.

Finally, Storm was lawfully seized and impounded, as authorized under Ohio Rev. Code § 959.132, and City of Middleburg Heights Ordinances §§ 618.03 and 618.05. The City Ordinances sufficiently define the prohibited conduct – in this case prohibitions against dogs at large and animal cruelty – and the City Ordinances do not conflict with, nor are they preempted by, State law. There is no basis upon which to declare the City Ordinances are unconstitutional.

**VII. Conclusion.**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket #44) is hereby GRANTED. Plaintiff's Motion for Summary Judgment (Docket #45) is hereby DENIED.

This case is hereby terminated.

All costs to be borne by Plaintiff.

IT IS SO ORDERED.

_/s/ Donald C. Nugent_
DONALD C. NUGENT
Senior United States District Judge

DATED: July 19, 2019

-16-